UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PATRICK CARPENTER** | * | **CIVIL ACTION NO.** |
| | * | |
| **VERSUS** | * | **SECTION " "** |
| | * | |
| **THE BOARD OF SUPERVISORS OF THE** | * | **MAGISTRATE " "** |
| **LOUISIANA COMMUNITY AND TECHNICAL** | * | |
| **COLLEGE SYSTEM, LOUISIANA BOARD** | * | |
| **OF REGENTS AND LOUISIANA** | * | |
| **TECHNICAL COLLEGE** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

## COMPLAINT AND JURY DEMAND

NOW INTO COURT, through undersigned counsel, comes plaintiff, Patrick Carpenter, ("Mr. Carpenter"), with this Complaint against The Board of Supervisors of the Louisiana Community and Technical College System, Louisiana Board of Regents and Louisiana Technical College, all collectively herein referred to as ("LTC") stating that the following causes of action are based upon the defendant's violations of Federal Law, via Title VII of the Civil Rights Act; as amended, 42 U.S.C. § 1981; violations of the Louisiana Employment Discrimination Law; and La. R.S. 23:967 *et seq.* as follows:

### I. PARTIES

1.

Plaintiff, Mr. Carpenter, is a citizen of the State of Louisiana, and of the United

States, and resides within the confines of the Middle District.

2.

Defendants, The Board of Supervisors of the Louisiana Community and Technical College System, Louisiana Board of Regents and Louisiana Technical College, are, upon information and belief, Louisiana governed and created educational institutions authorized to do and doing business within the confines of the Middle District of Louisiana.

## II.  JURISDICTION AND VENUE

3.

Mr. Carpenter asserts that jurisdiction is proper in this Honorable Court pursuant to federal question jurisdiction, 28 U.S.C. § 1331, as he will obtain his "Right to Sue" from the Equal Employment Opportunity Commission for his allegations of violations of Title VII of the Civil Rights Act; and also violations of the Louisiana Employment Discrimination Statute pursuant to this Court's Supplemental Jurisdiction.

4.

Venue is proper in this district under 28 U.S.C. § 1391 (a) and 42 U.S.C. § 2000(e)-5(f).

## III.  FACTS AND ALLEGATIONS

5.

Mr. Carpenter is an African-American male who has worked for the State of Louisiana for over thirteen (13) years.

6.

Mr. Carpenter worked for LTC for approximately four (4) years until his retaliatory termination on or about January 2, 2007.

7.

Upon information and belief, defendants utilize a progressive discipline policy and evaluation policy which includes: (1) verbal warnings to identify problems; (2) written warnings, including a formal meeting with the employee, to establish clear performance expectations to correct the problems; (3) an opportunity for the employee to present his or her case; and (4) termination, if the problems remain unresolved after the above steps.

8.

Plaintiff alleges that prior to complaining about racial discrimination and racial harassment, Plaintiff was never disciplined for deficient performance or misconduct.

9.

Plaintiff's employment at LTC began in December of 2002 when he was appointed as Director of Student Admissions (Student Services Officer III).

10.

Plaintiff alleges that in April of 2004, he verbally complained to Dr. K. McDaniel ("Dr. McDaniel"), the Associate Dean/Campus Administrator for LTC - BR Tech Campus, that he was being treated unfairly and not supported properly because of his race, African-American.

11.

In January of 2004, Plaintiff was assigned the position of Coordinator of

Corporate/Continuing Education and Safety Apprenticeship Training.

12.

On February 1, 2005, Mr. Carpenter received a memo from Dr. McDaniel and William S. Wainwright ("Mr. Wainwright"), the Dean of Workforce Development for LTC, Greater Capitol area, alleging that there was a problem with apprenticeship trainers not receiving compensation in a timely manner during the Christmas Holidays of 2004.

13.

Plaintiff alleges that this memo was unfair and/or unjustified. Plaintiff asserts that the memo was in retaliation for his complaint alleged above concerning race discrimination and racial harassment insofar as he had not been trained and was not advised that apprenticeship trainers were working over the Christmas Holidays.

14.

Indeed, the next day, Plaintiff was given his job description, which had not been given to him prior to that time, finally advising him of his duties and expectations.

15.

On February 4, 2005, Plaintiff wrote, Mr. Wainwright in response to the February 1, 2005 letter concerning the apprenticeship training program.

16.

In that letter, Plaintiff complained that he was being treated unfairly due to "racial harassment" toward him that had been evident and remained evident.

17.

Plaintiff provided specific examples of unfair treatment due to his race in this communication.

18.

Defendants failed to properly investigate Plaintiff's race discrimination complaint. There was no response and no investigation.

19.

Because there was no response to Plaintiff previous racial discrimination complaint, on March 10, 2005, Plaintiff complained in writing via certified mail (with return receipt) to Dr. Margaret Montgomery-Richard, Chancellor, LTC, that his previous complaints of racial discrimination and racial harassment had not been addressed by defendants.

20.

As to Plaintiff's March 10, 2005 formal written grievance concerning racial discrimination and racial harassment, once again, Defendants conducted no investigation and provided no response.

21.

After Defendants received the above referenced formal written grievance, Defendants placed an unfairly negative and unfairly low annual evaluation on his desk. The evaluation was signed by Mr. Wainwright, the Dean of Workforce Development, but Defendant never presented or reviewed the evaluation with Plaintiff.

22.

In the above referenced unfairly negative evaluation, Mr. Wainwright rated Plaintiff's performance in each category as mostly 2 out of 5 (with 5 being the best rating and 1 being the poorest rating).

23.

Plaintiff alleges that this evaluation was part of a concerted effort to paper his personnel file with unfairly negative and retaliatory entries to either unfairly justify his termination or to force his involuntary resignation.

24.

Plaintiff complained again in writing on April 6, 2005, to Dr. Montgomery-Richard that his prior complaints of race discrimination had not been addressed.

25.

Once again, there was no investigation and no response by Defendant.

26.

This time, the only response from Dr. Montgomery-Richards came from Dr. Montgomery-Richard's Assistant, April McGee ("Ms. McGee") that the Chancellor asked her to let Plaintiff know that "we are in the process of researching your grievance and will notify you within a few weeks."

27.

In spite of this "response" there was no investigation and no further reply to Plaintiff.

28.

Defendants next retaliatory action was to demote Plaintiff to the position of Financial Aid Officer which resulted in significant financial losses.

29.

That demotion was not justified in any manner.

30.

Plaintiff alleges that this demotion was retaliatory and for the purpose of papering his personal file with negative personnel events to either unfairly justify his termination or to force his involuntary resignation in retaliation for his race discrimination complaints.

31.

Because Defendants refused to properly investigate and failed to provide a reasonable response to his race discrimination complaints as referenced above, Plaintiff filed a charge of discrimination with the EEOC on July 25, 2005.

32.

Defendants response to this charge was to suspend Plaintiff supposedly for two days but which suspension ultimately lasted for thirty (30) days.

33.

Plaintiff was not advised that he could return to work until W. Wayne Meaux's ("Mr. Meaux") secretary called him to tell him he could return to work.

34.

Plaintiff ultimately was able to return to work in the Financial Aid office on

approximately September 13, 2005.

35.

In approximately July of 2006, there was a reorganization at LTC and Plaintiff began reporting to Lynn Hitchcock ("Ms. Hitchcock").

36.

Once again, on December 15, 2006, Mr. McDaniel made an unfair allegation in a letter that Plaintiff purportedly failed to use vans when attending a financial aid conference in Lake Charles, Louisiana.

37.

Plaintiff alleges that the allegations in December 15, 2006 letter are either blatantly untrue or grossly unfair and were in retaliation for his prior protected activity as part of Defendants' concerted effort to paper his personnel file with negative personnel issues to either unfairly justify his termination or to force is involuntary resignation.

38.

Upon information and belief, Defendants finally responded (but only to the EEOC) to Plaintiff's July 2005 EEOC charge in late December of 2006.

39.

Next, Plaintiff received a letter dated January 2, 2007 from Jim Henderson, ("Mr. Henderson"), Senior Vice President of Work Force Training Development for LTC system stating that "it had been determined in the best interest of the LTC system to terminate his employment effective January 2, 2007."

40.

Plaintiff alleges that, to the extent Defendants articulate any alleged deficient performance or misconduct as justifying his termination that those assertions are merely a pretext for the prohibited motivation of terminating him for retaliation and/or due to race discrimination.

## **COUNT ONE**

41.

Due to the above and foregoing allegations, Defendants are liable unto Mr. Carpenter pursuant to Title VII of the Civil Rights Act, and the Louisiana Employment Discrimination Act for race discrimination and prohibited retaliation, thus, creating Defendant's liability unto Mr. Carpenter for:

- A. Back-pay including benefits;
- B. Front-pay including benefits;
- C. Mental anguish;
- D. Humiliation/embarrassment;
- E. Loss of enjoyment of life;
- F. Medical expenses;
- G. Prejudgment interest;
- H. Punitive Damages;
- I. Attorney's fees;
- J. Costs of these proceedings; and

K.  Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law and Federal law.

## COUNT TWO

42.

In the further alternative, Defendants conduct as described herein is in violation of 42 USC §1981, which prohibits racial discrimination in employment and prohibits retaliation due to complaints concerning racial discrimination, and, as such, Defendants are liable unto plaintiff for:

A.  Back-pay (including benefits);

B.  Front-pay (including benefits as reinstatement is impractical);

C.  Mental anguish and depression;

D.  Humiliation/embarrassment;

E.  Loss of enjoyment of life;

F.  Medical expenses;

G.  Prejudgment interest;

H.  Uncapped Punitive damages;

I.  Attorney's fees;

J.  Costs of these proceedings; and

K.  Any injunctive relief enjoining Defendants from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently

restraining these violations of federal law.

43.

Plaintiff specifically pleads his right to recover punitive damages as Defendants' retaliatory actions were carried out with reprehensible malice and willful disregard of plaintiff's federally protected rights.

## COUNT THREE

44.

Upon information and belief, Defendants knew or should have known that the cumulative effect of Mr. Carpenter's racial discrimination conduct and Defendants retaliatory animus were substantially certain to cause emotional distress to Mr. Carpenter. As such, this conduct constitutes intentional infliction of emotional distress pursuant to Louisiana Civil Code Article 2315, as such, Defendant, are liable unto Mr. Carpenter for:

A. Mental anguish and depression;

B. Humiliation/embarrassment;

C. Loss of enjoyment of life;

D. Medical expenses;

E. Prejudgment interest;

F. Attorney's fees;

G. Costs of these proceedings; and

H. Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these

violations of Louisiana Law.

45.

Plaintiff reserves his right to supplement and amend this Complaint upon the discovery of additional facts.

46.

Plaintiff shows amicable demand to no avail.

## IV. JURY DEMAND

47.

Plaintiff demands trial by jury.

WHEREFORE, plaintiff, Patrick Carpenter, prays that defendant, The Board of Supervisors of the Louisiana Community and Technical College System, Louisiana Board of Regents and Louisiana Technical College be duly cited to appear and answer this Complaint and Jury Demand and, after due proceedings and legal delays, there be judgment herein in favor of your plaintiff, and against Defendants, as detailed in the foregoing Complaint and Jury Demand and in an amount reasonable in the premises, together with legal interest from the date of judicial demand, all costs of these proceedings, reasonable attorney's fees (with interest on attorney's fees from the date of judicial demand), punitive damages and any and all general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

Respectfully submitted,

**JAMES L ARRUEBARRENA,
ATTORNEY AT LAW, LLC**

_____
James L. Arruebarrena (#22235)
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
Telephone (504) 525-2520
Facsimile (504) 581-7083

Attorney for Patrick Carpenter


**SERVICE VIA SUMMONS**

**The Board of Supervisors of the Louisiana Community and Technical College System:**
*through the Chairperson of the Board of Supervisors of the Louisiana Community and Technical College System*

Mr. Brett Mellington
110 Bellridge
Lafayette, LA 70506


**Louisiana Community & Technical College System
and Louisiana Technical College**
*through its President*

Mr. Joe May
265 South Foster Dr.
Baton Rouge, LA 70806

**Louisiana Board of Regents**
*through the Chairman*

Mr. E. Joseph Savoie, Ed. D.
1201 North Third Street, Suite 6-200
Baton Rouge, LA 70802