UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PATRICK CARPENTER** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NUMBER 07- 0170-JJB-SCR** |
| | * | |
| **THE BOARD OF SUPERVISORS OF THE** | * | **JUDGE BRADY** |
| **LOUISIANA COMMUNITY AND** | * | |
| **TECHNICAL COLLEGE SYSTEM, ET AL** | * | **MAGISTRATE RIEDLINGER** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**MAY IT PLEASE THE COURT:**

<u>**SUMMARY OF CLAIMS**</u>

The present litigation centers around plaintiff's claim he was wrongfully demoted and ultimately terminated on the basis of his race. More particularly, plaintiff, Patrick Carpenter (hereinafter referred to as "Carpenter"), alleges he was appointed as Director of Student Admissions at Louisiana Technical College ("LTC") in December of 2002. See Complaint, ¶ 9.[1] In April of 2004, he verbally complained to Dr. Kay McDaniel ("McDaniel"), the Associate Dean/Campus Administrator for LTC-BR Tech Campus, that "he was being treated unfairly and not supported properly because of his race, African-American." Complaint, ¶ 10.

Carpenter was assigned the position of Coordinator of Corporate/Continuing Education and Safety Apprenticeship Training in January of 2004. Complaint, ¶ 11. He received a memo from

---

[1] Throughout the remainder of the Memorandum, as references are constantly made to allegations contained in the Complaint, the writer will not burden the reader with the continuous and repetitive use of the phrases "alleged," "allegedly," "allegations", and similar phraseology when referring to allegations made in the Complaint. By not constantly using these phrases, defendant in no way admits the allegations contained in the Complaint.

McDaniel and William Wainwright, Dean of Workforce Development, on February 1, 2005 charging him with failing to timely pay apprentice trainers during the 2004 Christmas holidays. Complaint, ¶ 12. According to plaintiff, the memo was in retaliation for his previous complaint about race discrimination, since he had not been trained and was not even aware trainers were working over the holidays. Complaint, ¶ 13. To be sure, the following day, he was provided a written job description for the first time, which advised him of the full extent of his job duties. Complaint, ¶ 14.

Carpenter complained to Dean Wainwright by letter dated February 4, 2005 that the payroll complaint against him was motivated by race. Complaint, ¶¶ 15-17. When no investigation or response was forthwithcoming, he sent a written grievance to Chancellor Margaret Montgomery-Richard on March 10, 2005. Complaint, ¶¶ 18-20. He subsequently received a negative performance evaluation from Dean Wainwright. Complaint, ¶¶ 21-23. He wrote to Chancellor Montgomery-Richard on April 6, 2005, but, again, no action was taken. Complaint, ¶¶ 24-27.

Carpenter was demoted to the position of Financial Aid Officer on February 28, 2005, supposedly in retaliation for his race discrimination complaints. Complaint, ¶¶ 28-30.[2] He filed a charge of discrimination with the EEOC on July 25, 2005. In response to the charge, he was suspended for thirty (30) days and returned to work on September 13, 2005. Complaint, ¶¶ 31-34.

McDaniel wrote plaintiff up on December 15, 2006 for failing to travel by company van to an out-of-town conference "in retaliation for his prior protected activity." Complaint, ¶¶ 36-37. By letter dated January 2, 2007, plaintiff was terminated. Complaint, ¶ 39.

Plaintiff instituted the present action against LTC on March 9, 2007. The Complaint asserts

---

[2] The date of the demotion is set forth in plaintiff's Charge of Discrimination.

–2–

discrimination claims under 42 U.S.C. § 1981, Title VII, and the Louisiana Employment Discrimination Law, LSA-R.S. 23:303, as well as a claim for intentional infliction of emotional distress ("IIED") under state law. In the way of relief, plaintiff seeks damages for loss of income, mental anguish, and punitive damages, as well as attorney's fees and costs.[3] He further seeks injunctive relief. By First Supplemental and Amended Complaint, plaintiff joined McDaniel and Wayne Meaux ("Meaux"), Vice Chancellor/Provost, as additional defendants asserting due process claims under § 1983.

## PROCEDURAL HISTORY

Defendants filed Motions to Dismiss. See Rec. Docs. 10 and 28. By Ruling issued on July 30, 2007, Rec. Doc. 38, the Court granted in part and denied in part the Motion. First, based on representations from the plaintiff he was no longer pursuing his § 1981, IIED, and state law employment retaliation claims, the Court dismissed these claims. The Court also dismissed plaintiff's Title VII claims since plaintiff failed to exhaust his administrative remedies prior to instituting suit. The Court further dismissed plaintiff's claims for declaratory and injunctive relief and his claim for punitive damages. As a result of the Ruling, the only claims remaining were plaintiff's § 1983 claims.

Defendants filed a Motion for Partial Summary Judgment on August 14, 2007, Rec. Doc. 47, wherein they sought the dismissal of plaintiff's § 1983 on the basis that, since Carpenter was an at-

---

[3] Plaintiff does not seek reinstatement to his former position.

will employee, he had no protected property interest in his employment and thus no right to due process with respect to the termination of his employment. In the meantime, plaintiff filed a motion to reconsider the dismissal of his Title VII claims. By Ruling issued on September 10, 2007, Rec, Doc.56, both motions were granted with the result that plaintiff's Title VII claims were reinstated and his § 1983 claims were dismissed.

## TITLE VII RULING REVISITED

In its original Ruling, Rec. Doc. 38, the Court noted the conflict within the Fifth Circuit as to the issue of whether exhaustion of administrative remedies is a jurisdictional prerequisite or merely a precondition to filing suit. Under Tolbert v. United States, 916 F.2d 245 (5th Cir. 1990), failure to exhaust administrative remedies deprives the court of jurisdiction over a plaintiff's Title VII claims, whereas under Pinkard v. Pullman-Standard, 678 F.2d 1211 (5th Cir. 1982), a right-to-sue letter is merely a condition precedent to filing a civil suit for relief under Title VII subject to equitable modification which may be cured if the plaintiff obtains a right to sue letter prior to the defendant's challenging the court's jurisdiction. Noting the rule in the Fifth Circuit that one panel may not overrule the decision of a prior panel, see T & L Computer Systems, Inc. v. Stanford, 155 F.Supp.2d 815, 818-19 (N.D. Tex. 2001), the Court avoided the conflict by following the jurisprudence developed within this Circuit which harmonizes these two seemingly conflicting opinions by limiting Pinkard to its facts so that Pinkard applies only to cases where the plaintiff obtains a right-to-sue letter prior to the defendant's filing of a motion to dismiss. Barton v. American Eurocopter Corp., 2002 WL 32487882 (N.D. Tex. Oct. 10, 2002); Sanborn v. David A. Dean & Associates, 1998 WL

690608 (N.D. Tex. Sept. 29, 1998); Gates v. City of Dallas, Texas, 1997 WL 405144 (N.D. Tex. July 15, 1997); Hollis v. Johnston-Tombigbee Furniture Mfg. Co., 1994 WL 1890941 (N.D. Miss. Dec. 21, 1994).

On reconsideration, the Court reversed its prior dismissal of Title VII claims. Rec. Doc. 56. This time, the Court disregarded the harmonizing cases, and, based on the conflicting panel rule, followed Pinkard and held that plaintiff's receipt of a right-to-sue letter cured the statutory deficiency. For the reasons set forth below, the Court's ruling on reconsideration is wrong.

First of all, the rule recognized in Tolbert that exhaustion of administrative remedies is a jurisdictional requirement was first adopted by the Fifth Circuit in Porter v. Adams, 639 F.2d 273, 276 (5th Cir. 1981). To be sure, Porter is cited in Tolbert. See Tolbert, 916 F.2d at 248. Accordingly, if any case is violative of the conflicting panel rule in this Circuit, it is Pinkard, not Tolbert, since Pinkard is at odds with the earlier Porter decision. Secondly, Pinkard and Tolbert are easily reconcilable. It is hornbook law that the holding of any case is limited to the facts before the court and that pronouncements of law made by a court outside of the facts are obiter dictum. In this regard, one panel's dictum cannot bind future panels. See, e.g., Uniroyal Chem. Co. v. Deltech Corp., 160 F.3d 238, 252 (5th Cir. 1998). See also Seminole Tribe v. Florida, 116 S.Ct. 1114 (1996)(observing that court is bound by holding of a case and all portions of the opinion necessary to that result). In Pinkard, the right-to-sue letter was issued before the motion to dismiss was filed. Therefore, as to cases where a right-to-sue letter is not issued at the time the defendant files a motion to dismiss, such as the present, Pinkard's holding is dictum. Thirdly, notwithstanding the split of

authority in this Circuit,[4] the Fifth Circuit and the district courts within the Circuit have consistently applied Tolbert in the last several years.  See  Herod v. Potter, 2007 WL 4180546, *2 (5th Cir. Nov. 27, 2007); Ruiz v. Ridge, 221 Fed.Appx. 323, 325 (5th Cir. 2007); Rolland v. U.S. Dept. of Veterans Affairs, 146 Fed.Appx. 743, 745 (5th Cir. 2005); Martinez v. Department of U.S. Army, 317 F.3d 511, 513 (5th Cir. 2003); Christophe v. Department of the Treasury, 2007 WL 3231543, *2 (E.D. La. Oct. 30, 2007); Miles v. Potter, 2007 WL 1890685, *5 (E.D. La. June 28, 2007); Caston v. Potter, 2007 WL 2750704, *3 (M.D. La. July 5, 2007); Wright v. U.S. Postal Services, 344 F.Supp.2d 956, 957 (M.D. La. 2004); Aston v. Gonzales, 2007 WL 1229017, *2 (W.D. La. April 23, 2007); Richardson v. Aetna Ins. Irving, Texas, 2008 WL 55126, *2 (N.D. Tex. Jan. 3, 2008).  To be sure, just last month, one court in this Circuit ruled as follows:

---

[4] The split within the Circuit on this point has been noted several times:

> [T]here is some dispute in this circuit regarding whether exhaustion is a prerequisite subject to equitable doctrines, or whether it implicates subject matter jurisdiction. See Pacheco v. Mineta, 448 F.3d at 788 n. 7. Compare Tolbert v. United States, 916 F.2d 245, 247 (5th Cir. 1990)(holding that a plaintiff's failure to exhaust his administrative remedies "wholly deprives the district court of jurisdiction over the case") with Young v. City of Houston, Tex., 906 F.2d 177, 180 (5th Cir. 1990)("A failure of the EEOC prerequisite does not rob a court of jurisdiction.").

Patton v. Gonzales, 197 Fed.Appx. 309, 312 (5th Cir. 2006)

> There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction. . . . Neither the Supreme Court nor this court sitting en banc has ruled that the exhaustion requirement is subject to waiver or estoppel, and our panels are in disagreement over that question. Compare Tolbert v. United States, 916 F.2d 245, 247 (5th Cir. 1990) ("[I]t is the well-settled law of this circuit that each [Title VII] requirement is a prerequisite to federal subject matter jurisdiction.") and Porter v. Adams, 639 F.2d 273, 276 (5th Cir. 1981)("The exhaustion requirement ... is an absolute prerequisite to suit") and Randel v. Dep't. of U.S. Navy, 157 F.3d 392, 395 (5th Cir. 1998)("If the claimant fails to comply with either of these [Title VII] requirements then the court is deprived of jurisdiction over the case.") with Young v. City of Houston, Tex., 906 F.2d 177, 180 (5th Cir. 1990)("A failure of the EEOC prerequisite does not rob a court of jurisdiction.") and Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 449 (5th Cir. 1983)("The basic two statutory requirements (although these are not necessarily 'jurisdictional') for a Title VII suit are... .").

Pacheco v. Mineta, 448 F.3d 783, 788 n. 7 (5th Cir. 2006).

> The filing of an administrative complaint is ordinarily considered a jurisdictional prerequisite to a Title VII action. (citations omitted). In other words, federal courts do not have jurisdiction to consider unexhausted Title VII claims. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, 40 F.3d 698, 711 (5th Cir. 1994)(citing Tolbert v. United States, 916 F.2d 245, 247-48 (5th Cir. 1990)(per curiam)). Exhaustion does not occur until the plaintiff files a timely charge with the EEOC and is entitled to receive a "right-to-sue" letter. 42 U.S.C. § 2000e-5(e) and (f); see also Taylor v. Books a Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002).

Wesley v. Yellow Transp., Inc., 2008 WL 294526, *4 (N.D. Tex. Feb. 4, 2008). It is hard to say Tolbert is not the law when the Fifth Circuit continues to apply Tolbert to this day.

The resolution of this issue is governed by a more basic principle. A district judge is bound by the legal precedent issued by other judges in the same district. Hartford v. Fidelity and Deposit Co. of Maryland, 2007 WL 2071659, *4 (E.D. La. July 17, 2007). Since the Middle District of Louisiana has recently followed Tolbert on two separate occasions, see Caston and Wright, this Honorable Court is bound to follow Tolbert.

### **ADMISSIBILITY OF "ME, TOO" EVIDENCE AND "MINI-ME" TRIALS**

Defendants anticipate plaintiff will attempt to offer into evidence testimony by former LTC employees that Meaux and McDaniel frequently used race as a determining factor in making decisions. With respect to each of these witnesses, there is no indication Meaux or McDaniel acted against the witness in a concrete employment manner, such as hiring, firing, wages, or terms of employment. Rather, the general consensus of this testimony is that Meaux and McDaniel exhibited a condescending attitude toward employees who disagreed with their viewpoint and failed to support dissenting employees or set them up to fail. Again, none of these employees were terminated or demoted at LTC.

Although these witnesses claim Meaux and McDaniel constantly discriminated against black employees, none of the witnesses filed a grievance against Meaux or McDaniel.[5]  In fact, with the exception of Carpenter, no employee has ever filed a claim, grievance, or charge of race discrimination against Meaux or McDaniel.  It would be inherently unfair to allow employees who failed to report (alleged) flagrant acts of racism in violation of the mandatory reporting provisions of LTC's strict, anti-harassment policy[6] to parade before this Court with their claim Meaux and McDaniel are racists of the highest order.

Defendants respectfully submit that this anticipated "me, too" evidence is inadmissible since it is irrelevant and any probative value of such evidence is far outweighed by its prejudicial effect.  See Rules 401, 402, and 403 of the Federal Rules of Evidence.  The obvious purpose of this evidence is to prove Meaux and McDaniel acted in conformity with their alleged prior bad acts in their dealings with Carpenter.  Evidence of prior bad acts is generally inadmissible under Rule 404(b) of the Federal Rules of Evidence.

"Courts are reluctant to consider 'prior bad acts' in the employment discrimination context where those acts do not relate directly to the plaintiff."  Krunosky v. Genesis Group Restaurants, LLC, 2007 WL 3310648, *1 (S.D. Ala. Nov. 6, 2007).  When the evidence involves a kind of alleged discrimination different from that alleged by the plaintiff, "the evidence [may be] likely to confuse the issues for the jury and unfairly prejudice the defendants."  Lewis v. Department of

---

[5] Dr. Jocelyn West filed a discrimination claim but immediately withdrew her complaint once she was questioned. about it.

[6] A copy of the policy is attached hereto as Exhibit "B".

–8–

Transportation, 187 Fed. Appx. 961, 961-62 (11th Cir. 2006)(upholding the exclusion of prior instances of discrimination against others, in part because the plaintiff claimed failure to promote, not retaliation or hostile work environment); accord Price v. Rosiek Const. Co., 509 F.3d 704, 708 (5th Cir. 2007)(upholding the exclusion of coworker's testimony concerning discriminatory jokes and other conduct not involving plaintiff); Chavis v. Clayton County School District, 147 Fed. Appx. 865, 867-68 (11th Cir. 2005)(upholding the exclusion of other instances of discrimination against others, because the plaintiff claimed retaliation and the other instances involved failure to promote; the trial court indicated that it did not want plaintiff to call witnesses who merely would "come in and tell their gripes about [the defendant supervisors]."). See also Denney v. City of Albany, 247 F.3d 1172, 1189 (11th Cir. 2001); Lewis v. Department of Transportation, 187 Fed. Appx. 961, 961-62 (11th Cir. 2006)(upholding the exclusion of prior instances of discrimination against others, in part because the plaintiff claimed failure to promote, not retaliation or hostile work environment); Goldsmith v. Bagby Elevator Co., Inc., 2008 WL 150585 (11th Cir. Jan. 17, 2008); McWhorter v. City of Birmingham, 906 F.2d 674, 679 (11th Cir. 1990)(no abuse of discretion in exclusion of non-plaintiff grievances against supervisor); Thomas v. Bed Bath & Beyond, Inc., 508 F.Supp.2d 1264, 1282 (N.D. Ga. 2007)(question of whether three other employees were discriminated against held to be "only minimally relevant to whether the company's legitimate, nondiscriminatory reasons for not promoting [plaintiff] are merely pretext").[7]

---

[7] The court in Thomas v. Bed Bath & Beyond explained why evidence of discrimination against other employees is of little probative value:

> For her second pretext argument, Thomas points to affidavits from three former African-American BB & B employees who believe that the company discriminated against them because of their race. In their affidavits, Alan Robinson, Emanuel Washington and Jeff Jones state that they perceived race discrimination while employed at BB & B. All three men allege that they witnessed the company's failure to promote African-

One of the concerns expressed by the courts about evidence of discrimination against other employees is that the admissibility of such evidence would result in a series of mini-trials relating to other employees' grievances.  See McWhorter, 906 F.2d at 679 (admission of other employees' grievances "could have resulted in a series of mini-trials centering on the employment history of each [employee]."); Chavis v. Clayton County School District, 147 Fed. Appx. at 867-68 (trial would "become a set of mini-trials on [d]efendants' personnel decisions"); Thomas v. Bed Bath & Beyond, 508 F.Supp.2d at 1282 ("question of whether [other employees were discriminated against] would also require separate fact-finding mini trials to determine whether [the employer] actually discriminated against these other individuals.").

In the present case, the alleged incidents of discrimination against other employees are unrelated to Carpenter's discrimination claims.  At best, the anticipated "me, too" evidence shows that McDaniel and Meaux displayed a condescending attitude towards black employees that did not support their viewpoint and that these dissenting employees had a diminished chance of promotion. At best, this evidence presents a weak case of a hostile working environment or a failure to promote but has absolutely no bearing on Carpenter's wrongful demotion and termination claims.  The admission of such evidence will lead to countless mini-trials.  Carpenter will present the testimony of

---

American employees, while Washington and Jones state that BB & B passed them over personally for promotions in favor of less-qualified Caucasian candidates. **Thomas attempts to demonstrate discriminatory intent based solely on these three anecdotal accounts.  Such accounts, however, do not constitute statistical evidence and are no more probative in this case than would be anecdotal evidence from other employees to the effect that they never witnessed discrimination and thought Plaintiff to be less qualified than others.** As a result, it would probably be inadmissible at trial under Rule 403 of the Federal Rules of Evidence, which excludes relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed.R.Evid. 403.

former employees who will testify Meaux and McDaniel are racists who mistreated them. To rebut this evidence, defendants will not only present evidence that their actions towards these witnesses were not racially motivated and were justified under the circumstances but will further present the testimony of employees and other witnesses that they never witnessed discrimination by defendants. This is precisely the sideshow the court sought to avoid in Thomas v. Bed Bath & Beyond, supra. For this reason, the evidence is not admissible. Even if admissible, the evidence of other harassment is insufficient to push the plaintiff past summary judgment. Denney, 247 F.3d at 1189-90 n. 10; Thomas v. Bed Bath & Beyond, 508 F.Supp.2d at 1282-83.[8]

## THE FILING OF THE DISCRIMINATION CHARGE DID NOT CAUSE PLAINTIFF'S TERMINATION

As in any tort suit, the plaintiff must prove that the defendant's conduct caused his injuries. In the context of a retaliatory discharge action, the plaintiff must prove that the filing of the charge of discrimination with the EEOC caused his termination. Causation may be established by circumstantial evidence including "proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992). See also ABF Freight Sys., Inc. v. National Labor Relations Board, 114 S.Ct. 835, 837 (1994)(discharges within six weeks and again within two months sufficient to create inference); O'Bryan v. KTIV Television, 64 F.3d 1188, 1194 (8th Cir. 1995)(termination within a few weeks after protected conduct sufficient); Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428,

---

508 F.Supp.2d at 1282 (emphasis added).

[8] The admissibility of "me, too" evidence was recently considered by the United States Supreme Court. See

445 (Minn. 1983)(elapse of two days shows retaliation); Schweiss v. Chrysler Motors Corp., 987 F.2d 548, 549 (8th Cir. 1993)(discharge within four days); Reich v. Hoy Shoe Co., 32 F.3d 361, 367 (8th Cir. 1994)(discharge within three days sufficient); Heimbach v. Riedman Corp., 175 F.Supp.2d 1167, 1173-74 (D.Minn.2001)(termination a few days after notification demonstrates causation); Couty v. Dole, 886 F.2d 147, 148 (8th Cir. 1989)(thirty days sufficient).  On the other hand, "[l]ong intervals between the conduct that is said to motivate an employer and the adverse employment decision complained of tend to undermine the inference that the discharge was retaliatory." Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp., 59 F.3d 80, 83 (8th Cir. 1995)(citing Thompson v. Campbell, 845 F.Supp. 665, 675 (D. Minn. 1994)(holding that four months between complaint and discharge standing alone fails to create an inference of retaliation)); Clark County Sch. Dist. v. Breeden, 121 S.Ct. 1508, 1511 (2001)(finding 20 months too long to establish causation); Rath, 978 F.2d at 1090 (expressing doubt that plaintiff who was discharged six months after filing complaint could establish a prima facie case of retaliation and citing Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986)("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an [inference] of retaliation.")); Ring v. Sears, Roebuck and Co., 250 F.Supp.2d 1130, 1136 (D. Minn.2003)(eight months too long to show causal connection).

The United States Fifth Circuit recently noted that four months is too long of a time period to support causation:

> We have noted that district courts in this circuit have allowed an inference of causation for summary judgment purposes where up to four months has elapsed. Evans v. Houston, 246 F.3d 344, 354 (5th Cir. 2001). The Supreme Court, however,

---

Sprint/United Mgmt. Co. v. Mendelsohn, 128 S.Ct. 1140 (2008).

has cited approvingly other circuit court cases that found three and four month periods too long to allow an inference of causation. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

Thomas v. Atmos Energy Corp., 223 Fed.Appx. 369, 378 (5th Cir. 2007). See also Ajao v. Bed Bath and Beyond Inc., 2008 WL 345505, *6-7 (5th Cir. Feb. 8, 2008)(four months insufficient to prove causation); Campbell v. England, 2007 WL 1454542, *4 (5th Cir. May 17, 2007)(four months too long to support causation); Wascura v. City of S. Miami, 257 F.3d 1238, 1247 (11th Cir. 2001)(three and one-half months too long to support causation); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997)(three month period between termination and protected activity not enough to demonstrate a causal connection); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992)(three-month period between protected activity and adverse action not enough to demonstrate causal connection); McGuire v. Miami-Dade County, 418 F.Supp.2d 1354, 1362 (S.D. Fla. 2006).

The lapse of time between the filing of Carpenter's EEOC complaint and his termination precludes a finding of causation in the present case. The Charge of Discrimination was filed on July 25, 2005, and his termination was some eighteen months later on January 2, 2007.

**PLAINTIFF FAILS TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION**

In order to establish a prima facie case of racial discrimination, a terminated or demoted employee must establish that: (1) He belongs to a protected group; (2) he was qualified for the position; (3) he was terminated or demoted because of his race; and (4) he was replaced by someone outside of the protected class. Piper v. Veneman, 183 Fed.Appx. 407 (5th Cir. 2006); Dumas v. Christian Health Ministries, 181 Fed.Appx. 433 (5th Cir. 2006); Price v. Federal Express Corp., 283

F.3d 715 (5th Cir. 2002). Therefore, in the present case, in order to prevail, Carpenter must prove that he was qualified for the position and that he was terminated or demoted because of his race and replaced by someone other than a black employee.

The undisputed evidence shows that Carpenter was unqualified for all of the positions he held at LTC. Due to his poor performance, Carpenter was shuffled throughout the LTC system. At the time of his "demotion" in September of 2005, Carpenter was reassigned from the position of Director of Corporate and Continuing Education. LaMoyne Williams, a black male, filled the position on an interim basis until he was made permanent Director of Workforce. There was a corporate reorganization, and the position of Director of Corporate and Continuing Education was eliminated and the duties of the position were absorbed by the Director of Workforce, LaMoyne Williams. When Carpenter was ultimately terminated on January 2, 2007, his position as Financial Aid Officer was filled by Latreva Walker, a black female.

It is difficult to envision how plaintiff can claim racism. According to his own witnesses, LaMoyne Williams was the "fair haired child" of Meaux and McDaniel, who could do no wrong in their eyes. In fact, Carpenter, himself, was a fair haired child when he initially hired on but, according to witnesses, lost this coveted status once he no longer shared Meaux and McDaniel's vision with respect to LTC.[9] As noted previously, Carpenter was replaced by an African-American when he was demoted and when he was terminated.

---

[9] Deposition excerpts from plaintiff's witnesses depositions are not attached to the present memorandum. Pertinent excerpts will be attached to defendant's Reply Memorandum.

## NEGATIVE JOB PERFORMANCE EVALUATIONS ARE NOT ACTIONABLE

Plaintiff relates several instances where McDaniel and Meaux placed negative evaluation reports in his personnel file. Presumably, through this allegation, plaintiff is asserting a hostile working environment claim. In order to be actionable under Title VII, the action complained of must constitute an adverse employment action. Negative performance evaluations are not adverse employment actions and therefore are not actionable. See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 407 n. 8 (5th Cir. 1999); Smith ex rel. C.R.S. v. Tangipahoa Parish School Bd., 2006 WL 3395938, *15 n. 17 (E.D. La. Nov. 22, 2006); Martin v. Kroger, 65 F. Supp. 2d 516, 536 (S.D. Tex. 1999); Lawson v. Reynolds Industries Inc., 2008 WL 111116 (9th Cir. Jan. 10, 2008); Moore v. Hillsborough County Bd. of County Com'rs, 2008 WL 125893, *12 (M.D. Fla. Jan. 8, 2008); Montgomery v. Chertoff, 2007 WL 1233551, *12 (E.D.N.Y. April 25, 2007); Gamble v. Chertoff, 2006 WL 3794290, at *6 (S.D.N.Y. Dec. 27, 2006); Pellei v. Int'l Planned Parenthood Federation/Western Hemisphere Region, Inc., 1999 WL 787753, at * 12 (S.D.N.Y. Sept. 30, 1999). In any event, plaintiff has offered no evidence that the complaints made against him by other employees are false. Therefore, plaintiff's complaint of negative performance evaluations fails as a matter of law.

## RETALIATION CLAIM

Under Title VII, 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing" concerning such practice. Thus, Title VII prohibits

employers from retaliating against employees either for opposing unlawful employment practices or for participating in Title VII proceedings.

While Title VII provides protection for employees against retaliation for their participation in Title VII proceedings, protection is not absolute. To make out a retaliation claim under Title VII of the Civil Rights Act, an employee who has been retaliated against must show that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring. Reynolds v. Alabama Dept. of Transp., 4 F.Supp.2d 1068, 1087 (M.D. Ala. 1998).

An employee cannot be said to have an objectively reasonable belief that he opposed an unlawful employment practice when his opposition is based on conduct that is not proscribed by Title VII. Stated differently, where the conduct complained of is not prohibited under Title VII, the complaint is not protected under Title VII. See Wilson v. Delta State Univ., 143 Fed.Appx. 611, 613-14 (5th Cir. 2005)(holding that employee's belief about employment practice is not reasonable if it is settled law that practice is not unlawful within Title VII); Hamner v. St. Vincent Hosp. and Health Care Ctr., Inc., 224 F.3d 701, 707 (7th Cir.2000)("If a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable."); Bicknell v. City of St. Petersburg, 2006 WL 560167, *6 (M.D. Fla. March 7, 2006); Walker v. Norris Cylinder Co., 2005 WL 2278080, *10 (N.D. Tex. Sept. 19, 2005).

In the present case, Carpenter complained his "demotion" in September of 2005 was based strictly on his race and alleges he was terminated for having filed a complaint. Plaintiff's demotion claim is not well-founded. The record is clear Carpenter was replaced as Director of Corporate and

Continuing Education by LaMoyne Williams, a black male. The record is further clear that Carpenter was unqualified for the position. There is absolutely no evidence to support plaintiff's claim his reassignment was based on race. Accordingly, Carpenter could not have reasonably believed that he opposed an unlawful practice, and therefore, his EEOC complaint was not protected conduct.

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law." Fed.R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate her opponent's claim. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552-53 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511(1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 2512; In Re Matter of Wildman, 859 F.2d 553, 557(7th Cir. 1988); Klein v. Ryan,

847 F.2d 368, 374(7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986(7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp., 106 S.Ct. 1348, 1356 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify "those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988). In ruling on a summary judgment motion, the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained;" and in such cases, summary judgment is appropriate. Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed.R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-

moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 106 S.Ct. at 1356; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 106 S.Ct. at 2512.

In the present case, there remains no genuine issue of material fact. Accordingly, the LTC is entitled to judgment as a matter of law.

**SUMMARY AND CONCLUSION**

For the reasons set forth hereinabove, the present action should be dismissed.

Respectfully submitted,

**CHARLES C. FOTI, JR.
ATTORNEY GENERAL**

BY:   s/ Scott G. Vincent
Scott G. Vincent (#14478)
Stacey Johnson (#27331)
Assistant Attorneys General

Louisiana Department of Justice
Litigation Division
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6300
Facsimile:  (225) 326-6495