UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PATRICK CARPENTER** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NUMBER  07- 0170-JJB-SCR** |
| | * | |
| **THE BOARD OF SUPERVISORS OF THE** | * | **JUDGE BRADY** |
| **LOUISIANA COMMUNITY AND** | * | |
| **TECHNICAL COLLEGE SYSTEM, ET AL** | * | **MAGISTRATE RIEDLINGER** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### STATEMENT OF UNCONTESTED MATERIAL FACTS

In compliance with Uniform Louisiana Local Rules of Court Rule 56.1, defendants, the Board of Supervisors of the Louisiana Community and Technical College System and Louisiana Board of Regents and Louisiana Technical College, submit the following statement of material facts as to which they contend there is no genuine issue to be tried:

1.

Patrick Carpenter (hereinafter referred to as "Carpenter" and "plaintiff") was hired as the Director of Student Affairs at Louisiana Technical Colleges Baton Rouge Campus on December 2, 2002 to replace Virginia Watts, a Caucasian female.[1]

2.

Carpenter was recommended for employment by Vice Chancellor/Provost Wayne Meaux. The initial, interviewing committee, of which Kay McDaniel ("McDaniel") was a member, narrowed the candidates down to three, Carpenter, William Hughes, and Dr. Alecia Cyprian.  McDaniel gave Carpenter a very high rating.  The second, hiring

---

[1] Affidavit of Kay McDaniel, ¶ 3; Meaux Aff. ¶ 7; Exhibit "D".

committee selected Carpenter for the position. Dr. West, who was a member of the second committee, voted against Carpenter in favor of Dr. Cyprian.[2]

**Director of Student Affairs Position**

3.

As Director of Student Affairs, plaintiff's first duty was to evaluate the status of the office and make any intra-office reassignments he deemed necessary to ensure the office operated efficiently.[3]

4.

One of the first areas plaintiff made decisions about was in the area of testing.[4]

5.

Historically, all standardized tests have been administered by the staff in the Office of Student Affairs primarily because they are trained in proper test administration standards and have the facilities to administer such tests.[5]

6.

The previous Practical Nursing Department Head, Mrs. Sybil Turnbull, implemented the PAX-PN exam for applicants to the Practical Nursing Program in 1989. The PAX-PN Test included science which was a better indicator of success in the medical field than was the general admissions test given to all applicants known as the Test of Adult Basic Education ("TABE"). The process was to place all PN applicants

---

[2] McDaniel Aff. ¶ 4; Meaux Aff. ¶¶ 4-6; Exhibits "C" and "D".

[3] McDaniel Aff. ¶ 5.

[4] McDaniel Aff. ¶ 6.

[5] McDaniel Aff. ¶ 7; Exhibits A-1-6.

2

who made successful scores on the TABE on a list to take the PAX-PN as a secondary screening process. The Office of Student Affairs maintained the list and would perform a mail-merge of the names and addresses to these students and would mail letters regarding the date and time the PAX-PN would be administered to those on the list. Staff of the Office of Student Affairs would then administer the test for the Practical Nursing Department and would forward the tests to the National League for Nursing ("NLN") to be scored. The results of the test would be sent by the NLN directly to the Office of Student Affairs.[6]

7.

When Carpenter took over the position of Director of Student Affairs, he made the decision that Student Affairs would no longer handle this testing.[7]

8.

Plaintiff made the decision without consulting the administration at BR Tech. When Beverly Pacas, the current department head for Health Services, found out about Carpenter's decision regarding testing, she wrote him a memorandum requesting that he allow his staff to administer the PAX-PN Test in May 2003 because her department was not set up to administer same.[8]

---

[6] McDaniel Aff. ¶ 8

[7] McDaniel Aff. ¶ 9

[8] McDaniel Aff. ¶ 10; Exhibit A-1.

9.

McDaniel, Regional Director for the Louisiana Technical College ("the LTC) in Baton Rouge, Louisiana, met with Carpenter on April 8, 2003 to discuss Mrs. Pacas' letter and asked him to help the nursing department by administering the PAX-PN Test.[9]

10.

On April 9, 2003, McDaniel received a 2 page letter from Carpenter advising her that he felt it was more professional for the individual department requiring special admission criteria to administer their own individualized testing. [10]

11.

McDaniel responded to Carpenter's letter regarding the PAX-PN exam on April 16, 2003, by asking him to ensure someone from his department assist the nursing department in administering the PAX-PN exam in May 2003.[11]

12.

On June 4, 2003, Beverly Pacas advised McDaniel that Carpenter never responded to an email she sent him on March 30, 2003. When McDaniel asked him why he failed to respond to Mrs. Pacas' email, Carpenter stated "it wasn't signed and he couldn't be sure it was from her."[12]

---

[9] McDaniel Aff. ¶ 11.

[10] McDaniel Aff. ¶ 12; Exhibit A-2.

[11] McDaniel Aff. ¶ 13; Exhibit A-3.

[12] McDaniel Aff. ¶ 14.

**E-Learning Survey**

13.

On June 18, 2003, McDaniel received an email from Jennifer Passman, Coordinator of the District II E-Learning advising McDaniel that she had made arrangements for students to complete an e-learning survey through Carpenter, but plaintiff failed to have students complete the survey. Ms. Passman had students complete the surveys during registration instead. Carpenter's failure to do his job significantly disrupted the flow of registration.[13]

**Frazier Campus**

14.

As Director of Student Affairs, one of Carpenter's duties was to handle student discipline. McDaniel began working with Carpenter by having him sit in on student issues so he could observe how to handle student problems. McDaniel subsequently asked Carpenter to handle a student problem in the cosmetology department at the Frazier Campus. Ms. Sanders, the Cosmetology Instructor, advised McDaniel that plaintiff made sexual remarks to her, but she refused to file a grievance.[14]

15.

While at the Frazier Campus for the purpose of handling student discipline, Carpenter got a manicure in the Cosmetology Department.[15]

---

[13] McDaniel Aff. ¶ 15; Exhibit A-5.

[14] McDaniel Aff. ¶ 16.

[15] McDaniel Aff. ¶ 17.

5

**The Brown/Miller Evaluations**

16.

Carpenter evaluated and submitted performance scores for Tammy Brown and Enola Miller for the entire year even though he had only supervised them for six months. McDaniel had to follow-up and ask Carpenter for copies of Mrs. Brown's and Mrs. Miller's evaluations because he failed to provide them in a timely manner.[16]

**PowerPoint Presentation**

17.

In July 2003, Carpenter conducted a lecture with Dr. Alecia-Cyprian-Andrews, Director of Admissions, but plaintiff did not meet with Dr. Andrews to plan the presentation and he used up all of the allotted time during his presentation. During his presentation, plaintiff spoke with tremendous authority on Student Affairs issues, but he gave out erroneous information. For instance, the information in Carpenter's PowerPoint presentation was in direct conflict with the BR Tech Student Catalog. Plaintiff also set deadlines for admissions without discussing it with McDaniel even after McDaniel advised him McDaniel was opposed to deadlines for the Technical College Students.[17]

18.

Carpenter's inability to communicate clearly and to provide direction and leadership escalated until he became ineffective. After much discussion regarding

---

[16] McDaniel Aff. ¶ 18; Exhibit A-7.

[17] McDaniel Aff. ¶ 19; Exhibits A-8 and A-29 (p. 5).

Carpenter's job performance, it was determined that he lacked the proper skill sets to be successful in the Office of Student Affairs.[18]

19.

He was therefore, detailed to LTC-Westside Campus to be mentored by the District Dean of Student Affairs, Dr. Joycelyn Brunswick, and other District Student Affairs staff members.[19]

**Westside Internship – August 2003 – January 2004**

20.

Effective August 11, 2003, Carpenter participated in an internship program. The objective was to expand services in the District. It was Vice Chancellor/Provost Wayne Meaux's decision to find an area of responsibility in which Carpenter could be successful.[20]

21.

After completing a semester of mentoring, Dr. Brunswick advised Wayne Meaux ("Meaux") "it was not working out," and asked that Carpenter be transferred back to the BR Tech Campus.[21]

---

[18] McDaniel Aff. ¶ 20; Exhibit A-8.

[19] McDaniel Aff. ¶ 21; Meaux Aff. ¶ 8.

[20] McDaniel Aff. ¶ 22.

[21] McDaniel Aff. ¶ 23; Meaux Aff. ¶ 9.

**Coordinator of Corporate/Continuing Education and Safety – January 2004 – February 2005**

22.

In an attempt to find a position in which Carpenter could find success, Meaux recommended that Carpenter be placed in the position of Coordinator of Corporate and Continuing Education and Safety under the direction of Michael Gassen, Assistant Dean, and William Wainwright, Dean of Workforce Development. The objective was for Carpenter to become independent and assume full responsibility for directing Continuing and Corporate Education at BR Tech Campus.[22]

23.

Carpenter was assigned the position of Coordinator of Corporate and Continuing Education and Safety in January of 2004. In this position, he was responsible for payroll. However, he failed to timely pay apprentice trainers during the 2004 Christmas holidays. Carpenter blamed this flagrant oversight on lack of training and the fact he was unaware trainers were working over the holidays.[23]

24.

As Safety Coordinator, Carpenter was assigned to write an ID policy for the BR Tech Campus. A committee was formed and began meeting in March 2004.[24]

25.

The process of trying to get Carpenter to produce this policy was very frustrating for the administration.[25]

---

[22] McDaniel Aff. ¶ 24; Meaux Aff. ¶ 10.

[23] McDaniel Aff. ¶ 25; Exhibits A-10 and A-20.

[24] McDaniel Aff. ¶ 26.

[25] McDaniel Aff. ¶ 27; Exhibits A-11, A-14, and A-19.

8

26.

McDaniel presented a draft of the policy produced by Carpenter's committee to the faculty on September 28, 2004. Since Carpenter was not present to address faculty and staff questions regarding the policy, McDaniel emailed questions to him on that same date. Receiving no response from Carpenter, McDaniel requested a status report on the new ID policy from Carpenter on October 20, 2004. On October 25, 2004, Carpenter submitted a new ID policy to McDaniel without addressing the questions she sent him on September 28th. Additionally, Carpenter added a refund fee for temporary ID's that the administration had overruled as early as April 2004. The ID policy was never completed.[26]

27.

It was agreed that Carpenter would report both to McDaniel and William Wainwright starting in July 2004.[27]

28.

McDaniel sent Carpenter emails requesting further clarification of the campus ID policy in November 2004.[28]

29.

McDaniel completed an Impact Report on Carpenter for failure to follow protocol in February 2005.[29]

---

[26] McDaniel Aff. ¶ 28; Exhibit A-17.

[27] McDaniel Aff. ¶ 29.

[28] McDaniel Aff. ¶ 30; Exhibit A-19.

[29] McDaniel Aff. ¶ 31; Exhibit A-22.

30.

LTC received two letters from apprenticeship leaders detailing the difficulties they had with Carpenter.[30]

31.

Under Carpenter's leadership, *the enrollment in continuing education dwindled to one class of 20 students.*[31]

32.

In an effort to find a single-focused position of responsibility in which Carpenter could find success and to fill a staff need, Meaux, once again, re-assigned Carpenter to serve as a Financial Aid Officer in the Office of Student Affairs at the BR Tech Campus.[32]

**Financial Aid Officer February 2005 – January 2007**

33.

By assigning Carpenter to the Financial Aid Office, the administration's intention was to give LaMoyne Williams assistance by dividing the alphabet and giving each of them a share of the total number of students on financial aid.[33]

34.

Carpenter would only be responsible for learning the Pell Grant regulations and processing students for the 2005 – 2006 Pell Year.[34]

---

[30] McDaniel Aff. ¶ 32; Exhibits A-25-26.

[31] McDaniel Aff. ¶ 33; Exhibit 39 (last page).

[32] McDaniel Aff. ¶ 34; Meaux Aff. ¶ 11.

[33] McDaniel Aff. ¶ 35; Exhibit A-29 (p. 9).

10

35.

Carpenter was sent to training classes at the LASFA Conference in Lafayette, Louisiana, told how to access the on-line training provided free of charge by the U.S. Department of Education and given the Federal Pell Grant regulations.[35]

36.

On April 27, 2005, LaMoyne Williams requested a meeting with Dr. Joycelyn Brunswick, Carpenter and McDaniel to discuss several issues, primarily a verbal exchange that occurred between Mr. Williams and Carpenter on that date.[36]

37.

During the meeting, Carpenter admitted that he did not attend all of the training sessions available to him at the LASFA Conference nor did he take advantage of the free online training provided by the U.S. Department of Education.[37]

38.

In an effort to ensure he had been adequately trained for the position, Carpenter underwent 1 week of intensive training at the Westside Campus under the direction of Mr. Marlon Morrison, District Director of Financial Aid.[38]

39.

Several employees at BR Tech overheard Carpenter give out false information to students regarding the awarding of Pell Funds.[39]

---

[34] McDaniel Aff. ¶ 36.

[35] McDaniel Aff. ¶ 37; Exhibit A-27.

[36] McDaniel Aff. ¶ 38.

[37] McDaniel Aff. ¶ 39.

[38] McDaniel Aff. ¶ 40; Exhibit A-28.

40.

Carpenter refused to ask anyone for help or clarification, including Mr. Williams, who was more than willing to assist him.[40]

**Annual Leave**

41.

On May 27, 2005, McDaniel sent Carpenter an email denying his request for annual leave on May 30, 2005 because of the workload of the Financial Aid Office.[41]

42.

*Carpenter called in sick on May 30, 2005.*[42]

**2005 Registration**

43.

On August 10, 2005, McDaniel received a call from Ms. Enola Miller, Office Manager for the Student Affairs Department. Ms. Miller was very concerned because Carpenter had just returned from his two-week vacation and was angry that students came to see him without appointments.[43]

---

[39] McDaniel Aff. ¶ 41; Exhibit A-29 (p. 10).

[40] McDaniel Aff. ¶ 42; Exhibit A-29.

[41] McDaniel Aff. ¶ 43; Exhibit A-30.

[42] McDaniel Aff. ¶ 44.

[43] McDaniel Aff. ¶ 45; Exhibit A-29 (p. 9).

44.

*The reason students came in without appointments is because they only had until August 12, 2005 to complete financial aid paperwork in order to be guaranteed a fall tuition deferment.*[44]

45.

Carpenter was aware of this deadline before he went on vacation.[45]

46.

Students whose last names begin with A-N were assigned to Carpenter and these students had to wait two weeks to see Carpenter while he was on vacation.[46]

47.

McDaniel telephoned Carpenter and advised him that he had to see all of the students who came to see him and that under no circumstances was he to turn any students away.[47]

48.

LaMoyne Williams called McDaniel at approximately 6:00 p.m. on August 11, 2005 and advised her that Carpenter was turning students away.[48]

49.

Carpenter's actions constituted insubordination.[49]

---

[44] McDaniel Aff. ¶ 46; Exhibit A-31.

[45] McDaniel Aff. ¶ 47.

[46] McDaniel Aff. ¶ 48; Exhibit A-29 (p. 9).

[47] McDaniel Aff. ¶ 49.

[48] McDaniel Aff. ¶ 50.

[49] McDaniel Aff. ¶ 51; Exhibit A-31.

50.

On August 12, 2005, McDaniel received calls from Laura Crook in Accounting, Margaret Elgin, HR Analyst and LaMoyne Williams. Angry students had been to Ms. Crook and Mrs. Elgin to complain about Carpenter. McDaniel was advised that Carpenter was not waiting on students and not serving them in a timely manner. *Carpenter also told students he would not defer any Pell Grants after Monday, August 15, 2005* despite the fact that Mr. Williams had sent Carpenter an email advising him that BR Tech defers Pell throughout registration if the paperwork is in order.[50]

51.

Carpenter's incompetence caused many students to have to return to his office multiple times simply because he refused to follow the work-flow pattern shown to him by Mr. Williams and did not produce documents and Pell Award Letters in a timely fashion.[51]

52.

As a result of the events that transpired during the week of August 10, 2005, McDaniel met with Carpenter on Monday, August 15, 2005, discussed the issues with him, placed him on forced leave for 15 hours (from 9:00 a.m. on Monday, August 15 through 4:30 p.m. on Tuesday, August 16, 2005), and completed his evaluation.[52]

---

[50] McDaniel Aff. ¶ 52.

[51] McDaniel Aff. ¶ 53; Exhibits A-32-34 and A-38.

[52] McDaniel Aff. ¶ 54; Exhibit A-35-36.

53.

Since Meaux was off campus for those two days, McDaniel instructed Carpenter to call Meaux and set up an appointment with him.[53]

54.

Carpenter did not call Meaux or return to the BR Tech Campus as he was instructed to do.[54]

55.

On Thursday, August 25, 2005, Mrs. Lillie Pryer, BR Tech Payroll Administrator, advised McDaniel that she did not have a signed time sheet nor approved annual leave forms for Carpenter from August 17 – August 25, 2005. As a result, McDaniel asked Mrs. Pryer to contact Carpenter to notify him of his status with the campus and to ask him if he had any plans to meet with Meaux.[55]

56.

The appointment to meet with Meaux was scheduled for August 29, 2005, but the meeting had to be cancelled due to Hurricane Katrina.[56]

57.

Given the fiasco created by Carpenter during Fall Registration, Carpenter and Meaux met on September 8, 2005 to discuss issues and options relating to his employment at the LTC. During their discourse, Meaux offered the option of transitioning Carpenter to work with corrections programs managed by the Folkes

---

[53] McDaniel Aff. ¶ 55.

[54] McDaniel Aff. ¶ 56.

[55] McDaniel Aff. ¶ 57.

[56] McDaniel Aff. ¶ 58.

Campus in Jackson, Louisiana. When their discussion ended, Meaux asked Carpenter to contact him in a couple of days, after he had an opportunity to think about the offer. On September 12, 2005, plaintiff declined Affiant's offer to transition to the Folkes Campus.[57]

58.

Given the fact Carpenter declined Meaux's offer to transfer to the Folkes Campus, McDaniel asked Margaret Webb to contact Carpenter and instruct him to report to McDaniel when he returned to work on Tuesday, September 13, 2005. Carpenter reported to Student Services. McDaniel had to call him to her office at 8:40 a.m.[58]

59.

Carpenter repeatedly failed to follow orders, ask for assistance from his supervisors, and work with other staff members in ways that would enable him to be successful and productive.[59]

60.

Although plaintiff was never disciplined for deficient performance, he was re-assigned to positions during his tenure at LTC due to his unsatisfactory work performance and LTC's desire to find a position for him in which he could be successful.[60]

---

[57] McDaniel Aff. ¶ 59; Meaux Aff. ¶¶ 13-16.

[58] McDaniel Aff. ¶ 60.

[59] McDaniel Aff. ¶ 61.

[60] McDaniel Aff. ¶ 62.

61.

In addition to providing him with the support he needed to learn each job assignment he was given, the staff at LTC worked very hard to provide Carpenter with many opportunities to be successful. Nonetheless, Carpenter worked in isolation and repeatedly failed to consult with his supervisors before he instituted major changes in the policy at LTC.[61]

62.

Carpenter was not terminated in retaliation for complaining about racial discrimination or harassment or on account of his race.[62]

63.

Carpenter was separated because he created dissension among the staff, disrupted the flow of work, hampered enrollment and created a burden on his supervisors who had to spend an inordinate amount of time reminding him of his duties and deadlines and frequently had to do his work for him.[63]

64.

At the time of his "demotion" in September of 2005, Carpenter was reassigned from the position of Director of Corporate and Continuing Education. LaMoyne Williams, a black male, filled the position on an interim basis until he was made permanent Director of Workforce. There was a corporate reorganization, and the position of Director of Corporate and Continuing Education was eliminated and the duties of the

---

[61] McDaniel Aff. ¶ 63.

[62] McDaniel Aff. ¶ 64; Meaux Aff. ¶¶ 3, 17-19; Carpenter Depo. pp. 152-54.

[63] McDaniel Aff. ¶ 65.

position were absorbed by the Director of Workforce, LaMoyne Williams. When Carpenter was ultimately terminated on January 2, 2007, his position as Financial Aid Officer was filled by Latreva Walker, a black female.[64]

          Respectfully submitted,

          **CHARLES C. FOTI, JR.**
          **ATTORNEY GENERAL**

BY:    __s/ Scott G. Vincent____
          Scott G. Vincent (#14478)
          Stacey Johnson (#27331)
          Assistant Attorneys General

Louisiana Department of Justice
Litigation Division
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone:  (225) 326-6300
Facsimile:   (225) 326-6495

---

[64] McDaniel Aff. ¶ 66.